OSCAR N. GORE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gore v. Commissioner
Docket No. 4257-71.
United States Tax Court
T.C. Memo 1973-99; 1973 Tax Ct. Memo LEXIS 187; 32 T.C.M. (CCH) 448; T.C.M. (RIA) 73099; April 25, 1973, Filed Oscar N. Gore, pro se. Dudley W. Taylor, for the respondent. FEATHERSTONE
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1969 in the amount of $276.82. The issues for decision are: whether petitioner is entitled to deductions for certain expenses incurred during 1969 in attending law school, and whether certain charitable contributions claimed for 1969 are deductible. 2 FINDINGS OF FACT Oscar N. Gore (hereinafter referred to as petitioner) was a resident of Marietta, Georgia, at the time his petition was filed with this Court. His income tax return for 1969 was filed with the Southeast Service Center, Chamblee, Georgia. During an unspecified *188 period prior to 1952, petitioner attended the University of Florida for 2 years. He was not enrolled in any particular major and did not receive a degree from that institution. In 1952, petitioner received a bachelor of laws degree from the Woodrow Wilson College of Law (Woodrow Wilson), and, in 1954, he received a master of laws degree from the Atlanta Law School (Atlanta). Both Woodrow Wilson and Atlanta are located in Atlanta, Georgia. Neither school is accredited by the American Bar Association (A.B.A.). Since his graduation from law school, petitioner has made several unsuccessful attempts to pass the Georgia Bar examination. At the time of the trial, he was not licensed to practice law. Commencing in 1965 and continuing through 1969, petitioner was employed as an administrative analyst by Lockheed of Georgia (Lockheed). In this position, he determined the responsibilities of the various departments of Lockheed under "unilateral" research and development contracts with the 3 Government. He also monitored his employer's progress under each contract and kept track of expenditures. When the expenses exceeded the amount appropriated under the contract, he assisted *189 in negotiations with the Government for additional funds. Although Lockheed employed between 100 and 150 administrative analysts, only one of these individuals, besides petitioner, possessed a law degree. All legal problems that arose in connection with the work of the administrative analysts were referred to either Lockheed's legal staff or the attorneys in the contract department. Such problems were not handled by the administrative analysts. Prior to September 1968, petitioner was informed of an open position in California on the staff of the chairman of the board of Lockheed. Although some of the duties involved in that position were similar to the duties petitioner performed as an administrative analyst, the salary was substantially greater in the new position and petitioner felt it was a better job. After petitioner decided to apply for a transfer to the California position, he discussed the matter with his division manager. As a result of that discussion, petitioner concluded that his chances of getting transferred would be increased if 4 he earned an additional law degree. Although he met the educational requirements for the new job, he felt the prestige of another *190 degree would help overcome the fact that he had attended law schools that were not accredited by the A.B.A.
In September 1968, petitioner enrolled in an evening program at the John Marshall University Law School (John Marshall) in Atlanta, Georgia, and, in June 1969, he received a doctor of jurisprudence degree. The courses leading to this degree included corporation law, income tax law, contracts, and banking and administration. The contracts course dealt with "bilateral" contracts rather than contracts of the type petitioner handled for Lockheed. None of these courses related to the skills petitioner needed as an administrative analyst. John Marshall is not accredited by the A.B.A.
In attending John Marshall in 1969, petitioner incurred the following expenses: Tuition
$400.00
Transportation to and from school
496.00
Books
106.12
Total
$1,002.12 5 Petitioner did not obtain the new position in California. Although his transfer to California was tentatively approved after he received the degree, his employment by Lockheed was terminated before the transfer was made. Subsequently, he again failed to pass the Georgia Bar examination. In his 1969 *191 return, petitioner deducted $1,002.12 and $275.60, respectively, as educational expenses and charitable contributions. In the notice of deficiency, the deduction for educational expenses was denied and the deduction for charitable contributions was allowed only to the extent of $130. OPINION The Internal Revenue Code contains no provisions dealing specifically with the deductibility of educational expenses. However, regulations have been issued interpreting the ordinary and necessary business expense provisions of Code section 162(a) to allow deductions for educational expenses which meet certain stated requirements. As a general rule, such expenses are deductible if the education "Maintains or improves skills required by the individual in his employment" or "Meets the express requirements of the 6 individual's employer" as a condition to the retention by the individual of his job. [1]
*192 Petitioner has not shown that his course of study at John Marshall meets either of these general standards of deductibility. According to his own testimony, the corporation, income tax, and banking and administration courses had 7 no relationship whatever to his work for Lockheed as an administrative analyst. The remaining course dealt with contract law. Since petitioner did not handle the legal problems arising under Lockheed's Government contracts but dealt merely with problems of administration, this course is likewise not related to the skills needed in his job. Moreover, even if a general background in contract law was helpful in petitioner's work, this course nevertheless was not related to his job because it did not deal with the type of contracts Lockheed had made with the Government. Indeed, petitioner testified, "I cannot see where I learned a great deal from the course * * * it was just another course in contracts." At another point, he stated, "Really, I cannot honestly say that I was any better off after getting the degree, after the year of study than I was before I began it." As to Lockheed's requirements for petitioner's continued employment, the record *193 clearly shows that Lockheed did not suggest that petitioner obtain this additional legal education as a condition to the retention of his employment. In fact, of the 100 to 150 administrative analysts doing the type of work in which petitioner was engaged, only one other employee had a law degree. 8 While the grounds for petitioner's claim to the disputed deduction have not been articulated precisely, we understand that his principal argument is that he thought another law degree would give him additional "prestige" and thereby enhance his chances of getting the better paying job on the staff of Lockheed's board chairman. However, this argument overlooks the fact that, for educational expenses to be deductible by an individual, there must be a direct relationship between the education and the particular skills required for the individual's job. Carroll v. Commissioner, 418 F.2d 91, 95 (C.A. 7, 1969), affirming 51 T.C. 213 (1968); David N. Bodley, 56 T.C. 1357, 1362 (1971). The mere fact that the education permits the employee to show on his personal data sheet that he has another educational degree does not meet the requirements of the *194 regulations. Cf. Carroll v. Commissioner, supra.
As to the charitable contribution, petitioner gave no testimony and offered no explanation as to how he computed the amount of his claimed deduction. In view of the lack of any evidence substantiating the amount of the deduction which he claimed, we are compelled to conclude that petitioner is not entitled to a deduction for charitable contributions in excess of the amount allowed. Decision will be entered for the respondent. Footnotes
1. Sec. 1.162-5(a), Income Tax Regs., is, in pertinent part, as follows: Sec. 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b) (2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. This general rule is subject to other provisions of the regulations (sec. 1.162-5(b) (2) and (3)↩) declaring described types of expenditures to be nondeductible.In disposing of the present case, we need not consider this latter set of provisions.